## WESTFIELD INSURANCE COMPANY, Appellant,

v.

## JARRETT RECLAMATION SERVICES, INC., et al., Appellees.

[Cite as *Westfield Ins. Co. v. Jarrett Reclamation Serv., Inc.* (1996), 114 Ohio App.3d 492.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 95-B-7.

Decided Sept. 30, 1996.

*Thomas L. Tribbie* and *Josephine Ellen Hayes*, for appellant.

*Stanley G. Burech* and *Donna L. Crow*, for appellee Jarrett Reclamation Services, Inc.

*Gerald P. Duff* and *Michael McCormick*, for appellee Deborah J. Abbott, Admr. of the Estate of Bradley J. Abbott, Deceased.

O'NEILL, Presiding Judge.

On October 29, 1992, Bradley J. Abbott, an employee of Jarrett Reclamation Services, Inc., was killed when the walls of a trench he was working in collapsed upon him. Deborah J. Abbott was appointed as administrator of the estate of Bradley J. Abbott. Counsel for the administrator notified Jarrett Reclamation Services, Inc. that an intentional tort claim was being asserted against it. Jarrett provided notice of the claim to its liability insurer, appellant Westfield Insurance Company, which denied coverage for the claim based on exclusions appearing in the policy for (1) an obligation under a workers' compensation or similar law and (2) injury to an employee arising out of and in the course of his employment.

On July 14, 1993, Jarrett's counsel wrote to Westfield and advised Westfield that neither of the two exclusions applied because the underlying intentional tort case is outside the scope of the workers' compensation laws. On August 20, 1993, Westfield filed a declaratory judgment action against Jarrett to determine the rights of the parties under the insurance policy. Jarrett filed a timely answer and a counterclaim.

On October 19, 1993, the administrator filed a complaint against Jarrett and others alleging in part that, on October 29, 1992, Jarrett exposed the deceased, Bradley J. Abbott, to an injury that was substantially certain to occur.

On May 23, 1994, Westfield filed an amended complaint naming the administrator as a new party defendant. On the same day, Jarrett filed an answer to the amended complaint and also filed a counterclaim. On June 3, 1994, Westfield filed an answer to Jarrett's counterclaim.

On September 23, 1994, Jarrett filed a motion for summary judgment on Westfield's amended complaint and on its counterclaim. On October 5, 1994, Westfield filed a reply memorandum to Jarrett's motion for summary judgment and also a motion for summary judgment on its amended complaint.

On October 11, 1994, Jarrett filed a reply memorandum to Westfield's motion for summary judgment. On October 20, 1994, the administrator filed a motion joining in Jarrett's motion for summary judgment and a memorandum in opposition to Westfield's motion for summary judgment.

On October 24, 1994, the trial court heard oral arguments of the parties' counsel and, on December 29, 1994, the trial court entered a judgment entry denying Westfield's motion for summary judgment and partially granting the motion for summary judgment of Jarrett and the administrator, finding that Westfield has a duty and obligation under the terms of the policy to provide for a defense of Jarrett in the intentional tort case and, further, a duty to reimburse Jarrett for attorney fees. A timely notice of appeal was filed directed to this final judgment.

Appellant Westfield's assignment of error contends that the trial court erred in denying appellant's motion for summary judgment and in granting summary judgment to Jarrett and declaring that appellant had a duty to defend Jarrett and pay its attorney fees in the underlying lawsuit brought by the administrator. It is contended that specific exclusions exist in the insurance policy which effectively preclude coverage for the Jarrett as a result of the death of Bradley J. Abbott.

In *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, the Supreme Court cited its holding in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555. In *Willoughby Hills*, the

court held that where the insurer's duty to defend is not apparent from the pleadings, but the allegations state a claim which is potentially or arguably within the policy coverage or there is some doubt as to whether a theory of recovery within the policy coverage has been pled, the insurer must accept the defense of the claim. In *Sanderson, supra,* the court stated, in paragraph one of the syllabus, that an insurer has an absolute duty to defend under certain conditions, as follows:

"An insurance policy which states that the insurer is obligated to defend in any action seeking damages payable under the policy against the insured, even where the allegations are groundless, false or fraudulent, imposes an absolute duty upon the insurer to assume the defense of the action where the complaint states a claim which is partially or arguably within policy coverage."

Pertinent to disposition of this case is paragraph 11 of the complaint filed by the administrator of the estate of Bradley J. Abbott, naming Jarrett, among others, as defendant. Paragraph 11 reads as follows:

"Defendant Jarrett required Plaintiff's decedent to perform work under such circumstances that this Defendant knew could likely cause severe injury or death. Defendant Jarrett knew of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; and knew that if Plaintiff's decedent was subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee would be a substantial certainty; and that under such circumstances, and with such knowledge, it did act to require the Plaintiff's decedent to continue to perform the dangerous task."

Appellant Westfield argues that three relevant exclusions, which appear in the policy, taken singly or together effectively preclude any possibility of coverage under the policy in question. The exclusions appear under Section I, Coverage A of the Policy and specifically at page 1 of the policy. Paragraph 2 of that provision reads as follows:

"This insurance does not apply to:

"a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

" * * *

"d. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

"e. 'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured; or

"(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

"This exclusion applies:

"(1) Whether the insured may be liable as an employer or in any other capacity."

Initially, appellant Westfield points out that, after the decedent's death, his representative applied for and collected workers' compensation benefit pursuant to his death. Continuing, appellant argues that the exclusion precluding coverage for any injury covered by workers' compensation would necessarily exclude coverage on these facts.

In *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 631 N.E.2d 582, the Supreme Court had the following to say:

"We have previously stated, however, that intentional torts are completely unrelated to workers' compensation and the employment relationship. In *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, [576 N.E.2d 722,] we held that '[w]hile [a] cause of action [alleging a workplace intentional tort] contemplates redress of tortious conduct that occurs during the course of employment, an intentional tort alleged in this context necessarily occurs outside the employment relationship.' *Id.* at paragraph one of the syllabus." *AFL–CIO*, 69 Ohio St.3d at 230, 631 N.E.2d at 587.

It reasonably follows that an action in intentional tort against an employer does not involve any obligation of the insured under a workers' compensation law. Exclusion 2(d) does not apply to the facts of this case.

■ Appellant next points to Exclusion (e), which excludes:

" 'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured; or

"(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above;

"This exclusion applies:

"(1) Whether the insured may be liable as an employer or in any other capacity * * *."

In its motion for summary judgment in the trial court, appellant did not address this exclusion. The forum of a reviewing court is not a place where, for the first time, a point which has not been deemed of essence at the trial and

which has not been seriously pressed to the attention of the court is to be brought to the front for the mere technical purpose of securing a reversal of a judgment which the court finds otherwise correct. 4 Ohio Jurisprudence 3d (1978) 299–300, Appellate Review, Section 137.

The general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Childs* (1968), 14 Ohio St.2d 56, 43 O.O.2d 119, 236 N.E.2d 545, paragraph three of the syllabus.

██ Next, appellant points to the exclusion for bodily injury "expected or intended from the standpoint of the insured" in Section I, Coverage A, 2(a). The whole thrust of appellant's motion for summary judgment was directed to this exclusion. Made a part of its motion were various portions of depositions of the appellee Jarrett and one of its employees. Considering these depositions, a person can easily arrive at the determination that the decedent did not meet his death as the result of an intentional tort committed by Jarrett on the decedent. Both of these deponents testified that, at the time of his death as the result of a collapsing trench, the decedent was at a point on a job site where he had not been directed to go and neither of the deponents could explain why he was in that location when he met his death. In its response to Westfield's summary judgment motion, Jarrett, the appellee, agrees that "reasonable minds can only conclude that there has been no intentional tort committed by Jarrett on Bradley Abbott."

"An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, paragraph one of the syllabus.

In *Jones,* the Supreme Court further stated, at 95, 15 OBR at 250, 472 N.E.2d at 1051:

"Thus, a specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is *substantially certain,* not merely likely, to occur. It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct."

In paragraph 11 of her complaint, the appellee alleged that the decedent was caused to work in conditions which would likely cause severe injury or death "and knew that if plaintiff's decedent was subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee would be a substantial certainty." It is easy to conclude that the cause

of action brought by the appellee administrator is one based upon intentional tort by the employer. This allegation in the complaint clearly brings the cause within the exclusion of bodily injury or property damage expected or intended from the standpoint of the insured. In the case of *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74, the Supreme Court was called upon to interpret an insurance policy which provided coverage for bodily injuries resulting from an occurrence, which was defined as accident including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. Two employees filed separate actions against Wedge for personal injuries sustained in separate punch press accidents. Both employees alleged that their injuries resulted from intentional torts committed by Wedge. In disposing of the case, the Supreme Court stated:

"Applying this test to the intentional tort allegations contained in Pariseau's and Walls' complaints, we are unable to discern any possibility of coverage under the policy issued to Wedge by Hartford. The policy covers bodily injuries 'neither expected nor intended' by Wedge. Under the *Jones* test an intentional tort by Wedge must necessarily involve either an intent to injure or a belief that injury is substantially certain to occur. Clearly, no coverage is provided if Wedge intended to injure Pariseau and Walls. More importantly, we are unable to see how Wedge could have committed any acts with the *belief* that Pariseau [and] Walls were *substantially certain* to be injured, yet not have '*expected* ' such injuries to occur.

" \* \* \*

"Therefore, we hold that an intentional tort allegedly committed by an employer against its employee is not covered by an insurance policy which provides protection for bodily injures 'neither expected nor intended' by the employer." (Emphasis *sic.*) *Wedge Products*, 31 Ohio St.3d at 67, 31 OBR at 181–182, 509 N.E.2d at 75–76.

The Supreme Court went on to direct its attention to a prior case:

"We are mindful of our decision in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, [9 OBR 463, 459 N.E.2d 555,] syllabus, wherein we held: 'Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.'

"As in *Willoughby Hills,* Hartford's policy states that its duty to defend exists 'even if any of the allegations of the suit are groundless, false or fraudulent

\* \* \*.' *Willoughby Hills*, however, does not require a defense where the complaint contains no allegation that states a claim 'potentially or arguably within the policy coverage.' There is no doubt here. No theory of recovery within the policy coverage has been pleaded, regardless of whether the allegations are true, false, fraudulent or groundless. \* \* \*" *Wedge Products*, 31 Ohio St.3d at 67–68, 31 OBR at 182, 509 N.E.2d at 76.

We apply the same test to the case at hand. The singular allegation in the complaint filed by the administrator against Jarrett is based upon an intentional tort. As we have previously stated, on the authority of *Wedge, supra*, there is no coverage afforded in the policy for intentional torts.

The judgment of the trial court is reversed and judgment is entered in behalf of the plaintiff-appellant.

*Judgment reversed.*

GENE DONOFRIO and COX, JJ., concur.